Defendant USAA's Copy

STATE OF MAINE
AROOSTOOK, ss.

SUPERIOR C
CIVIL ACTIC
DOCKET NC

ANGELO DRAGIJA and HEIDI DRAGIJA, married individuals residing in Limestone, Aroostook County, State of Maine,

PLAINTIFFS

v.

USAA GENERAL INDEMNITY COMPANY, a corporation with a principal place of business in San Antonio, Texas,

DEFENDANT

**COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, INTEREST ON OVERDUE INSURANCE BENEFITS, AND UNFAIR CLAIMS SETTLEMENT PRACTICES**

NOW COME the Plaintiffs, Angela Dragija and Heidi Dragija, by and through their counsel, Christopher M. Leger, Esq., and state as follows:

## PARTIES

1. Plaintiffs Angelo Dragija and Heidi Dragija are individuals who own real property and a dwelling under construction located at 117 Rista Road, New Sweden, Aroostook County, Maine 04762.

2. Defendant USAA General Indemnity Company ("USAA") is an insurance company organized and existing under the laws of a state other than Maine, with a principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288.

3. USAA is authorized to conduct insurance business in Maine and issued the property insurance policy that is the subject of this action.





557a8893-1a32-101a-8267-ef31ae908002 USAA Confidential

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 4 M.R.S. § 105, the Maine Uniform Declaratory Judgments Act, 14 M.R.S. §§ 5951–5963, and 24-A M.R.S. §§ 2436 and 2436-A.

5. The Maine Uniform Declaratory Judgments Act authorizes the Court to declare the parties' rights and other legal relations under a written contract, whether before or after a breach of that contract.

6. Venue is proper in Aroostook County pursuant to 14 M.R.S. § 501 because the insured property is situated in Aroostook County, the insured loss occurred in Aroostook County, and a substantial portion of the events giving rise to Plaintiffs' claims occurred in Aroostook County.

## THE CONSTRUCTION PROJECT

7. Plaintiffs undertook construction of a dwelling and related improvements at 117 Rista Road in New Sweden, Maine ("the Property").

8. Plaintiffs retained Lucas Rollins, doing business as LNE Construction, to serve as the general contractor or principal contractor for the construction project.

9. The project included construction of a residence, garage, and related permanent improvements at the Property.

10. The construction budget shown on the project draw documentation was approximately $400,000.

11. During the course of construction, Rollins and LNE Construction submitted or caused to be submitted multiple requests for construction draws.

12. Plaintiffs, their lender, or both made substantial payments in reliance upon the draw requests, representations concerning the progress of the construction, and representations that construction materials had been or would be purchased for permanent incorporation into the dwelling and related structures.

13. The project draw documentation dated October 10, 2024, reported approximately $72,500 as previously paid and requested an additional draw of approximately $47,021.24.





557a8893-1a32-101a-8267-ef31ae908002
USAA Confidential

14. The project draw documentation dated December 1, 2024, reported approximately $119,521.24 as previously paid and requested an additional draw of approximately $19,616.

15. The project draw documentation dated January 13, 2025, reported approximately $139,137.24 as previously paid and requested an additional draw of approximately $20,054.25.

16. The project draw documentation dated June 11, 2025, reported approximately $165,266.41 as previously paid and requested an additional draw of approximately $26,755.04.

17. The project draw documentation dated August 7, 2025, reported approximately $192,021.45 as previously paid and requested an additional draw of approximately $24,800.10.

18. The draw requests and construction records reflected expenditures or allocations for materials and components including, without limitation:

a. Roofing materials;
b. Sheathing;
c. Siding and exterior trim;
d. Rough lumber;
e. Finish lumber;
f. Trusses;
g. Framing materials;
h. Drywall;
i. Windows;
j. Interior and exterior doors and trim;
k. Plumbing fixtures;
l. Electrical fixtures;
m. Heating components;
n. Cabinets;
o. Flooring;
p. Garage rough lumber;
q. Garage sheathing;
r. Garage framing materials; and
s. Other building materials and supplies intended for permanent incorporation into the dwelling, garage, or other insured structures.





557a8893-1a32-101a-8267-ef31ae908002
USAA Confidential

19. The foregoing materials were not contractor tools, machinery, vehicles, construction equipment, or other property intended to remain the personal property of Rollins or LNE Construction.

20. Instead, the materials were purchased with Plaintiffs' construction funds for the specific purpose of becoming permanent components of Plaintiffs' dwelling, garage, or other improvements at the Property.

21. Numerous materials were delivered to, stored at, installed at, or otherwise located on or next to the Property.

22. To the extent any covered materials were temporarily located away from the Property or were in transit, those materials were intended to become permanent parts of Plaintiffs' dwelling or other insured structures.

23. Rollins and LNE Construction failed to complete the construction project.

24. After receiving substantial construction funds, Rollins ceased work, abandoned the project, became unavailable to Plaintiffs, or otherwise failed to return and complete the contracted work.

25. Plaintiffs subsequently discovered that numerous materials and supplies purchased for the project were missing.

26. Upon information and belief, Rollins or persons acting in concert with Rollins wrongfully removed, appropriated, converted, or stole those construction materials.

27. The stolen materials included the materials identified in the inventory, invoices, receipts, photographs, delivery records, draw documentation, law-enforcement records, and other information provided or offered to USAA in support of Plaintiffs' insurance claim.

28. The stolen materials were intended to become permanent parts of the dwelling, garage, or other insured structures.

29. The stolen materials were not property that Rollins or LNE Construction was entitled to remove from the Property or retain for use on other construction projects.



557a8893-1a32-101a-8267-ef31ae908002
USAA Confidential

30. Plaintiffs had an insurable interest in the stolen materials because Plaintiffs paid for or were financially responsible for the materials and because the materials had been acquired specifically for use in Plaintiffs' construction project.

31. As a result of the theft, Plaintiffs have been required to replace or will be required to replace the stolen materials in order to complete the dwelling and related improvements.

## ACTIVE CONSTRUCTION AT THE TIME OF LOSS

32. The dwelling and related structures remained under construction and had not been completed as of September 23, 2025.

33. The dwelling had not been occupied more than 30 days before the claimed loss.

34. Construction work occurred at the Property during the 30 days immediately preceding the loss.

35. Alternatively, to the extent the exact date upon which particular materials were stolen cannot presently be determined, the theft occurred during an applicable period in which work had taken place on the dwelling or other structures during the immediately preceding 30 days.

36. The conditions necessary for application of the Dwelling Under Construction, Builders' Risk endorsement were therefore satisfied.

## THE INSURANCE POLICY

37. USAA issued Rental Property Insurance Policy No. GIC 03574 61 14 80A to Plaintiffs.

38. The policy was in force from October 24, 2024, through October 24, 2025.

39. The original declarations identified the insured property by a different street number.

40. Effective August 30, 2025, USAA issued amended declarations identifying Plaintiffs as the named insureds and identifying 117 Rista Road, New Sweden, Maine, as the insured and described location.


557a8893-1a32-101a-8267-ef31ae908002
USAA Confidential

41. The September 23, 2025 theft loss occurred after the August 30, 2025 amendment identifying 117 Rista Road as the described location.

42. The amended declarations provided Coverage A – Dwelling in the amount of $402,000.

43. The amended declarations provided Coverage B – Other Structures in the amount of $40,200.

44. The declarations identified an all-other-perils deductible of $2,000.

45. The declarations and policy schedule identified the following forms and endorsements, among others, as parts of the insurance contract:

a. QRDP3 (08-13), Quick Reference – Special Form;
b. DP-3(02) (08-13), Rental Property Insurance – Special Form;
c. DP-HS (04-18), Sharing Economy Endorsement;
d. DP-ME (08-16), Maine Special Provisions;
e. DP-207ME (08-13), Cancellation and Nonrenewal – Maine;
f. DP-SFPME (05-14), Standard Fire Policy Endorsement; and
g. DP-UC (08-13), Dwelling Under Construction, Builders' Risk.

46. The policy packet expressly advised Plaintiffs that "Builders' Risk coverage is provided for dwelling under construction."

## COVERAGE FOR CONSTRUCTION MATERIALS UNDER THE BASE POLICY

47. Under Section I – Property We Cover, Coverage A – Dwelling, the DP-3(02) base policy expressly covers:

> "Materials and supplies located on or next to the 'described location' used to construct, alter or repair the dwelling or other structures on the 'described location.'"

48. Materials and supplies purchased for and intended to become permanent components of Plaintiffs' dwelling, garage, or other insured structures are therefore property described under Coverage A.





557a8893-1a32-101a-8267-ef31ae908002
USAA Confidential

49. The stolen construction materials claimed by Plaintiffs were located on or next to the described location, except for any items subject to the separate off-premises or in-transit coverage afforded by DP-UC.

50. The stolen materials were used or intended to be used to construct the dwelling, garage, or other structures at the described location.

51. Subject to the policy's provisions and applicable limits, the stolen materials therefore constitute property insured under Coverage A.

## THE BASE-POLICY THEFT EXCLUSIONS

52. The unmodified DP-3(02) base policy initially provided, under "Losses We Do Not Cover Under Coverages A and B," that USAA did not insure:

a. "Theft of property not part of a covered building or structure"; and
b. "Theft in or to a dwelling or structure under construction."

53. Standing alone, the unmodified exclusion for theft in or to a structure under construction would have excluded losses that the Dwelling Under Construction endorsement was specifically issued to insure.

54. The DP-UC endorsement expressly changed those policy provisions.

## DP-UC DWELLING UNDER CONSTRUCTION, BUILDERS' RISK ENDORSEMENT

55. DP-UC (08-13) is titled "Dwelling Under Construction, Builders' Risk."

56. DP-UC states that the endorsement changes the policy and must be read carefully.

57. DP-UC applies to a dwelling or structures insured under Coverage A or Coverage B while under construction.

58. Under the heading "New Construction Theft Coverage," DP-UC expressly provides:

> "Coverage is provided for loss caused by theft of materials and supplies which will become a part of the dwelling or other structures."

59. DP-UC further provides that items 1(c) and 1(d) of the base policy's exclusions applicable to Coverages A and B are deleted and replaced.

60. DP-UC replaces the two prior theft exclusions with the following materially narrower exclusion:

> "Theft of property which will not become part of a covered dwelling or structure."

61. DP-UC thereby expressly deletes the base policy's exclusion for theft "in or to a dwelling or structure under construction."

62. DP-UC also deletes the base policy's broader exclusion for theft of property not already part of a covered building or structure.

63. The controlling exclusion under DP-UC applies only to property that will not become part of a covered dwelling or structure.

64. Conversely, DP-UC affirmatively covers the theft of materials and supplies that will become part of the dwelling or other structures.

65. The stolen materials claimed by Plaintiffs were purchased for and intended to become permanent parts of the dwelling, garage, or other insured structures.

66. The stolen materials therefore fall within the express grant of "New Construction Theft Coverage" under DP-UC.

67. The remaining theft exclusion does not apply because the claimed materials were intended to become parts of covered structures.

68. DP-UC separately excludes contractor equipment, aircraft, motor vehicles, watercraft, machinery, tools, and similar property that will not become permanent parts of the insured structure.

69. Plaintiffs do not seek coverage for Rollins's or LNE Construction's tools, vehicles, machinery, contractor equipment, or similar property that would not have become a permanent part of the insured structures.

70. Plaintiffs seek coverage only for property falling within Coverage A, Coverage B, the affirmative theft grant in DP-UC, or the endorsement's off-premises or in-transit coverage.

## OFF-PREMISES OR IN-TRANSIT MATERIALS

71. DP-UC separately provides up to $5,000 in coverage for building materials or supplies intended to become permanent parts of the dwelling or other structure while the materials or supplies are located elsewhere within the United States or are in due course of transit.

72. The off-premises and in-transit coverage does not increase the amount of insurance applicable to Coverage A and is excess over other collectible insurance.

73. To the extent any stolen materials were temporarily located away from the Property or in transit at the time of theft, Plaintiffs are entitled to coverage for those items up to the applicable $5,000 limit, subject to the policy's terms.

74. The $5,000 off-premises or in-transit limit does not apply to materials located on or next to the described location and otherwise covered under Coverage A and DP-UC.

## EFFECT OF THE STANDARD FIRE POLICY ENDORSEMENT

75. The policy also includes DP-SFPME (05-14), the Maine Standard Fire Policy endorsement.

76. The Standard Fire Policy endorsement principally addresses coverage for fire, lightning, and removal from premises endangered by covered perils.

77. The Standard Fire Policy endorsement states that other perils or subjects may be insured by a written endorsement added to the policy.

78. DP-UC is a written endorsement added to the policy that specifically and affirmatively provides new-construction theft coverage.

79. DP-UC specifically addresses theft of materials and supplies during construction, whereas the Standard Fire Policy endorsement does not specifically address the new-construction-theft coverage purchased by Plaintiffs.

80. The Standard Fire Policy endorsement does not nullify or supersede the express affirmative grant of new-construction-theft coverage contained in DP-UC.

81. Reading the policy as a whole and giving effect to each provision, DP-UC provides coverage for theft of qualifying construction materials notwithstanding general language regarding theft in the Standard Fire Policy endorsement or unmodified base policy.

82. Any interpretation under which the Standard Fire Policy endorsement nullified DP-UC would deprive the affirmative new-construction-theft grant of meaning and would render the principal coverage promised by DP-UC illusory.

**PLAINTIFFS' PERFORMANCE OF POLICY OBLIGATIONS**

83. Plaintiffs paid or caused to be paid the premiums required under the policy.

84. The policy was in full force and effect on the date of loss.

85. Plaintiffs timely notified USAA of the theft loss.

86. Plaintiffs notified law enforcement concerning the theft or other criminal conduct associated with the loss.

87. Plaintiffs cooperated with USAA's investigation.

88. Plaintiffs provided or offered to provide USAA with information and documentation concerning:

a. The construction contract;
b. The construction budget;
c. The draw requests;
d. Payments made for construction work and materials;
e. Invoices and receipts;
f. Delivery records;
g. Photographs of the construction and materials;
h. The identity of the stolen materials;
i. The intended use of the stolen materials;
j. The disappearance or abandonment of the project by Rollins;
k. Law-enforcement involvement;
l. The cost to replace the stolen materials; and
m. The continuing construction activity at the Property.



557a8893-1a32-101a-8267-ef31ae908002
USAA Confidential

89. Plaintiffs have complied with, substantially complied with, or were excused from compliance with all conditions precedent to coverage and suit.

90. To the extent USAA contends that Plaintiffs did not provide a particular document or proof of loss, USAA denied coverage on a categorical policy-interpretation ground and thereby waived, excused, or rendered futile any further submission unrelated to that stated denial.

## THE INSURANCE CLAIM AND USAA'S DENIAL

91. USAA assigned claim number 035746114-801, or a claim number ending in 801, to Plaintiffs' theft claim.

92. USAA's claim records identify 117 Rista Road as the location of the loss.

93. USAA's claim records identify September 23, 2025, as the date of loss.

94. USAA closed the theft claim without paying the covered loss.

95. On or about January 8, 2026, USAA denied coverage for the claim.

96. USAA stated, in substance, that the policy excludes theft losses.

97. USAA's stated position did not accurately acknowledge or apply the provision of DP-UC stating that coverage is provided for theft of materials and supplies that will become part of the dwelling or other structures.

98. USAA's stated position did not accurately acknowledge or apply the deletion of the base policy's exclusion for theft in or to a dwelling or structure under construction.

99. USAA's stated position did not accurately acknowledge or apply the replacement exclusion, which applies only to property that will not become part of a covered dwelling or structure.

100. USAA did not identify a reasonable basis for treating the claimed permanent construction materials as contractor equipment, machinery, tools, vehicles, watercraft, or similar property that would not become permanent parts of the structures.

101. USAA did not reasonably distinguish between:





557a8893-1a32-101a-8267-ef31ae908002 USAA Confidential

a. Uninsured contractor equipment or tools;
b. Economic losses arising solely from unearned construction draws; and
c. The covered physical loss by theft of identifiable materials and supplies intended for permanent incorporation into the insured structures.

102. Plaintiffs' claim concerns the third category: the theft of identifiable construction materials expressly insured under DP-UC.

103. USAA's denial deprived Plaintiffs of the specific new-construction-theft coverage described in and afforded by DP-UC.

104. USAA has failed and refused to pay Plaintiffs the amounts due under the policy.

105. The amount of Plaintiffs' covered loss is presently estimated to be **$159,191.49**, subject to completion of the replacement-cost inventory, application of the policy's valuation provisions, the applicable deductible, and proof at trial.

106. Plaintiffs continue to incur costs associated with replacing the stolen materials and completing or restoring the dwelling and related improvements.

107. An actual and justiciable controversy exists as to the parties' rights and obligations under the policy.

## COUNT I

## DECLARATORY JUDGMENT
## 14 M.R.S. §§ 5951–5963

108. Plaintiffs repeat and reallege paragraphs 1 through 107 as though fully set forth herein.

109. The policy, including DP-3(02), DP-ME, DP-SFPME, and DP-UC, constitutes a written contract of insurance between Plaintiffs and USAA.

110. Plaintiffs are persons interested under that written contract whose rights and legal relations are affected by USAA's interpretation and denial of coverage.


557a8893-1a32-101a-8267-ef31ae908002 USAA Confidential

111. Coverage A expressly includes materials and supplies located on or next to the described location and used to construct, alter, or repair the dwelling or other structures at that location.

112. DP-UC expressly provides coverage for theft of materials and supplies that will become parts of the dwelling or other structures.

113. DP-UC expressly deletes the base policy's exclusion for theft in or to a dwelling or structure under construction.

114. DP-UC replaces the prior theft exclusions with a narrower exclusion applicable only to property that will not become part of a covered dwelling or structure.

115. The materials claimed by Plaintiffs were intended to become permanent parts of covered structures.

116. The remaining theft exclusion therefore does not apply to Plaintiffs' claimed materials.

117. The stolen construction materials are property insured under Coverage A, Coverage B, DP-UC, or the separate off-premises and in-transit provision of DP-UC, depending upon the location and intended use of each item at the time of loss.

118. The policy's general or standard-fire provisions must be read in conjunction with, and may not be applied to nullify, the specific and express coverage afforded by DP-UC.

119. To the extent there is any conflict between a general theft limitation and DP-UC's specific new-construction-theft grant, the specific endorsement controls the treatment of theft of construction materials while the dwelling or other structures are under construction.

120. Alternatively, if the relevant policy provisions are reasonably susceptible to competing interpretations, the policy is ambiguous and must be interpreted in favor of coverage and against USAA as the drafter.

121. Plaintiffs are entitled to a declaration that the policy covers loss caused by theft of materials and supplies that were intended to become permanent parts of the insured dwelling or other structures.



557a8893-1a32-101a-8267-ef31ae908002
USAA Confidential

122. Plaintiffs are entitled to a declaration that USAA is obligated to investigate, adjust, value, and pay the covered loss in accordance with the policy.

**WHEREFORE**, Plaintiffs request that the Court:

A. Declare that DP-UC provides coverage for theft of materials and supplies intended to become permanent parts of Plaintiffs' dwelling or other insured structures;
B. Declare that DP-UC deletes the base policy's exclusion for theft in or to a dwelling or structure under construction;
C. Declare that the remaining theft exclusion applies only to property that will not become part of a covered dwelling or structure;
D. Declare that the Standard Fire Policy endorsement does not nullify the specific new-construction-theft coverage provided by DP-UC;
E. Declare that materials located on or next to the Property are not subject to the $5,000 off-premises or in-transit limit;
F. Declare that any qualifying materials located off-premises or in transit are covered up to the applicable $5,000 limit;
G. Declare that USAA is required to investigate, adjust, value, and pay Plaintiffs' covered loss;
H. Award Plaintiffs their costs; and
I. Grant such other declaratory or supplemental relief as the Court deems just.

## COUNT II

## BREACH OF CONTRACT

123. Plaintiffs repeat and reallege paragraphs 1 through 122 as though fully set forth herein.

124. The policy is a valid and enforceable contract between Plaintiffs and USAA.

125. Plaintiffs performed, substantially performed, or were excused from performing all material contractual obligations and conditions precedent.

126. Plaintiffs sustained a direct physical loss by theft of tangible construction materials and supplies covered under Coverage A, Coverage B, and DP-UC.

127. The stolen materials were intended to become permanent parts of the dwelling or other insured structures.





557a8893-1a32-101a-8267-ef31ae908002 USAA Confidential

128. The claimed loss occurred during the policy period.

129. The claimed loss occurred while the dwelling and other structures remained under construction.

130. Construction had taken place during the 30 days immediately preceding the loss, and the conditions stated in DP-UC were satisfied.

131. Plaintiffs timely reported the loss and cooperated with USAA.

132. USAA breached the insurance contract by:

a. Failing to apply the express affirmative grant of new-construction-theft coverage;
b. Failing to apply DP-UC's deletion of the base policy's construction-theft exclusion;
c. Applying a theft exclusion that had been deleted or materially narrowed by DP-UC;
d. Failing to distinguish covered permanent construction materials from excluded contractor equipment and tools;
e. Failing to investigate and adjust the claim under the policy provisions applicable to materials and supplies;
f. Denying coverage for an expressly covered peril and category of property;
g. Failing to pay the covered loss; and
h. Closing the claim without providing the benefits promised under the policy.

133. As a direct and foreseeable result of USAA's breach, Plaintiffs have sustained damages including, without limitation:

a. The actual cash value or replacement cost of the stolen covered materials, as determined under the policy;
b. Amounts Plaintiffs actually and necessarily expend to replace covered materials;
c. Covered costs necessary to restore or complete insured portions of the dwelling and related structures;
d. Consequential damages that were reasonably foreseeable at the time of contracting and are recoverable under Maine law;
e. Prejudgment and post-judgment interest; and
f. Other damages to be established at trial.



557a8893-1a32-101a-8267-ef31ae908002
USAA Confidential

**WHEREFORE**, Plaintiffs request judgment against USAA for:

A. All insurance benefits due under the policy;
B. Compensatory and consequential damages in an amount to be established at trial;
C. Prejudgment and post-judgment interest;
D. Costs; and
E. Such other relief as the Court deems just.

**COUNT III**
**INTEREST ON OVERDUE INSURANCE BENEFITS**
**24-A M.R.S. § 2436**

134. Plaintiffs repeat and reallege paragraphs 1 through 133 as though fully set forth herein.

135. Plaintiffs submitted a claim for payment of benefits under a policy of insurance delivered or issued for delivery in Maine.

136. Plaintiffs provided USAA with notice and information sufficient to identify the nature, location, and circumstances of the claimed theft loss.

137. Plaintiffs provided or offered to provide documentation sufficient for USAA to determine whether the stolen items were materials and supplies intended to become permanent parts of the insured structures.

138. USAA denied coverage and closed the claim.

139. USAA failed to pay the amounts due under the policy within the period required by 24-A M.R.S. § 2436.

140. To the extent USAA disputed the claim in writing, USAA's stated position was not based upon a reasonable application of the complete insurance contract because it failed to give effect to DP-UC's express new-construction-theft coverage.

141. USAA's stated position did not include sufficient detail concerning DP-UC's affirmative coverage grant and deletion of the construction-theft exclusion to permit Plaintiffs fairly to understand and respond to USAA's position.


557a8893-1a32-101a-8267-ef31ae908002 USAA Confidential

142. USAA's failure to address the endorsement most directly governing the claimed peril and property was not a reasonable investigation or reasonable written explanation of the grounds for disputing the claim.

143. The insurance benefits due to Plaintiffs became overdue within the meaning of 24-A M.R.S. § 2436.

**WHEREFORE,** Plaintiffs request judgment against USAA for:

A. All overdue insurance benefits;
B. Statutory interest under 24-A M.R.S. § 2436;
C. Prejudgment and post-judgment interest;
D. Costs; and
E. Such other relief as the Court deems just.

## COUNT IV
## UNFAIR CLAIMS SETTLEMENT PRACTICES
## 24-A M.R.S. § 2436-A

144. Plaintiffs repeat and reallege paragraphs 1 through 143 as though fully set forth herein.

145. USAA was Plaintiffs' own insurer for the loss at issue.

146. USAA issued and possessed the complete policy, including DP-UC.

147. USAA knew that DP-UC was listed in the declarations as part of the insurance contract.

148. USAA knew that its policy packet represented to Plaintiffs that builder's-risk coverage was provided for the dwelling under construction.

149. USAA knew that DP-UC expressly stated that coverage was provided for theft of materials and supplies that would become parts of the dwelling or other structures.

150. USAA knew that DP-UC deleted the base policy's exclusion for theft in or to a dwelling or structure under construction.



557a8893-1a32-101a-8267-ef31ae908002 USAA Confidential

151. USAA knew that DP-UC replaced the prior theft exclusions with a narrower exclusion applicable only to property that would not become part of a covered dwelling or structure.

152. Plaintiffs' claim identified or reasonably disclosed that the stolen property consisted of construction materials purchased for permanent incorporation into the insured dwelling, garage, or other structures.

153. Notwithstanding the foregoing, USAA stated, represented, or implied that the policy excluded theft losses without accurately disclosing or applying the controlling language of DP-UC.

154. To the extent reflected in USAA's denial, claim notes, communications, training materials, or claim-handling decisions, USAA knowingly misrepresented pertinent policy provisions and the coverage afforded by DP-UC in violation of 24-A M.R.S. § 2436-A(1)(A).

155. USAA failed to affirm coverage under the applicable provisions within a reasonable time after completing or having a reasonable opportunity to complete its investigation, in violation of 24-A M.R.S. § 2436-A(1)(D).

156. USAA failed, without just cause, to effectuate prompt, fair, and equitable settlement after its liability for qualifying construction materials became reasonably clear, in violation of 24-A M.R.S. § 2436-A(1)(E).

157. USAA acted without just cause because it lacked a reasonable basis to deny all coverage based upon a construction-theft exclusion that DP-UC expressly deleted and replaced.

158. USAA lacked a reasonable basis to deny all coverage without determining which claimed items:

a. Were materials or supplies;
b. Were intended to become permanent parts of covered structures;
c. Were located on or next to the described location;
d. Were located off-premises or in transit;
e. Were contractor tools or equipment; and
f. Otherwise satisfied the express requirements of DP-UC.


557a8893-1a32-101a-8267-ef31ae908002 USAA Confidential

159. A reasonable investigation required USAA to apply DP-UC to the facts of Plaintiffs' claim on an item-by-item basis rather than deny the claim categorically on the ground that theft was excluded.

160. USAA's failure to apply the directly controlling endorsement deprived Plaintiffs of the specific coverage for which USAA accepted a premium and which USAA represented was part of the policy.

161. As a direct and proximate result of USAA's statutory violations, Plaintiffs have sustained damages, including unpaid insurance benefits, costs associated with replacing stolen materials, delay-related losses, and expenses incurred in enforcing their rights.

**WHEREFORE**, Plaintiffs request judgment against USAA for:

A. Damages caused by USAA's violations of 24-A M.R.S. § 2436-A;
B. Reasonable attorney fees;
C. Costs and disbursements;
D. Interest on damages at the statutory rate of 1.5% per month;
E. Prejudgment and post-judgment interest; and
F. Such other relief as the Court deems just.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

1. Enter a declaratory judgment establishing that DP-UC provides coverage for theft of qualifying construction materials and supplies;
2. Enter a declaratory judgment establishing that DP-UC deleted the base policy's exclusion for theft in or to a dwelling or structure under construction;
3. Enter judgment against USAA for all insurance benefits due under the policy;
4. Award Plaintiffs compensatory and recoverable consequential damages;
5. Award statutory interest under 24-A M.R.S. § 2436;
6. Award damages, reasonable attorney fees, costs, disbursements, and interest at 1.5% per month under 24-A M.R.S. § 2436-A;
7. Award prejudgment and post-judgment interest;
8. Award Plaintiffs their costs; and
9. Grant such other legal and equitable relief as the Court deems just.

Dated at Caribou, Maine, this 26th day of October, 2026.



557a8893-1a32-101a-8267-ef31ae908002 USAA Confidential

CHRISTOPHER M. LEGER, ESQ.
cleger@kelleyleger.com
ATTORNEY FOR PLAINTIFFS
P.O. BOX 66
CARIBOU, ME 04736
Maine Bar # 8250



557a8893-1a32-101a-8267-ef31ae908002 USAA Confidential

CONTAINS NONPUBLIC DIGITAL INFORMATION

**MAINE JUDICIAL BRANCH**

*Complete the caption that applies to your case:*

☐ Angelo & Heidi Dragija Plaintiff/Petitioner

V.

USAA General Indemnity Company Defendant/Respondent

__________ Other Party

*"X" the court for filing:*

☒ Superior Court ☐ District Court
☐ Unified Criminal Docket
☐ Supreme Judicial Court

County: Aroostook
Location (Town): Caribou
Docket No.: CARSC-CIV-2026-

**OR**

☐ IN RE: __________

## NOTICE REGARDING ELECTRONIC SERVICE

**NOTICE TO PARTIES:** All parties who are represented by an attorney are subject to the requirements of Electronic Service under Rule 5 of the Maine Rules of Civil Procedure, and Rule 49(d) of the Maine Rules of Unified Criminal Procedure.

**OPT IN**: *If you do not have an attorney*, papers that must be served on you by other parties in this case will be sent to you through the regular mail to your address of record. But **you have a choice** to allow other parties to serve you by sending documents electronically to your designated email address.

**PLEASE NOTE: Any electronic service that you opt into applies only to papers served on you by other parties.** It does not apply to documents that are sent to you by the court or documents that you file with the court.

**Even if you opt in to allow service by email, you can only send documents to the other parties by email if (1) they also opt in by completing this form, and (2) you can scan and create .pdf files of documents.**

**If you choose not to opt in, you do not need to do anything.** If you would like to receive papers electronically, you must meet the requirements set forth below. Check the appropriate box(es), sign, and mail or email the form to all other parties in the case. Do not file this form with the Court.

☐ **Electronic Receipt:** I choose to OPT IN to allow other parties to email me documents in this case. I have reviewed and meet all of the following electronic receipt requirements:

- ☐ I have a trusted email account and I have daily access to this account;
- ☐ I understand that **I will receive time-sensitive documents** through this email address including documents that may require me to take action in this case;
- ☐ This email account has available electronic storage of at least 1 gigabyte;
- ☐ This email account accepts emails with attachments of up to 10 megabytes; and
- ☐ I will be able to maintain this email account throughout this case.

Date (*mm/dd/yyyy*): __________

► __________
Signature of Self-Represented Party
*(You do not have to print and sign this form. Typing your name above after /s/ will be accepted as an electronic signature.)*

Print name: __________

Print email address: __________

**ADA Notice:** The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
**Language Services:** For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

CONTAINS NONPUBLIC DIGITAL INFORMATION

**MAINE JUDICIAL BRANCH**

STATE OF MAINE

______________________ County

On (*date*) ____________, I served the Complaint (and Summons, and Notice Regarding Electronic Service) upon Defendant ________________________________ by delivering a copy of the same at the following address:

____________________________________________________________

☐ to the above-named Defendant in hand.

☐ to (*name*) ______________________________, a person of suitable age and discretion who was then residing at Defendant's usual residence.

☐ to (*name*) ______________________________, who is authorized to receive service for Defendant.

☐ by (*describe other manner of service*): ______________________________________________

____________________________________________________________

____________________________________________________________.

Date (*mm/dd/yyyy*): ______________ ► ______________________________

Deputy Sheriff Signature

______________________________

Printed Name

______________________________

Agency

**Costs of Service:**

| | |
|---|---|
| Service: | $ ________ |
| Travel: | $ ________ |
| Postage: | $ ________ |
| Other: | $ ________ |
| **Total** | $ ________ |

**ADA Notice:** The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
**Language Services:** For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.